UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ALLEN SHUMATE,

      Plaintiff,                Case No: 20-10856

                                   Judge David M. Lawson

v.                         Magistrate Michael J. Hluchaniuk

CITY OF ADRIAN, a municipal entity,
and OFFICER JEREMY POWERS,
in his individual and official capacities,

      Defendants.

| | |
|---|---|
| Geoffrey N. Fieger (P30441) | John J. Gillooly (P41948) |
| David A. Dworetsky (P67026) | Kathleen M. Griffith (P79921) |
| FIEGER, FIEGER, KENNEY & HARRINGTON, P.C. | GARAN LUCOW MILLER, P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 19390 W. Ten Mile Road | 1155 Brewery Park Blvd., Ste. 200 |
| Southfield, MI  48075 | Detroit, MI   48207 |
| 248.355.5555 | 313.446.5501 |
| d.dworetsky@fiegerlaw.com | jgillooly@garanlucow.com |
| | kgriffith@garanlucow.com |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I. <u>**Overview**</u>.

This is a straightforward excessive force case, with clear questions of fact precluding summary judgment, arising out of an incident that occurred on September 27, 2019.  Defendant Powers, an officer with the City of Adrian Police Department, despite no active resistance by Plaintiff Robert Shumate, tased Mr. Shumate, and then while on top of him, proceeded to tase him two additional times, knee him in the ribs multiple times, and punch him multiple times in the back of his neck and right side of his head.  At no time did Mr. Shumate present a threat to Defendant Powers, or anyone for that matter.  Summary judgment is not warranted in this case as to the excessive force claims against Defendant Powers, or as to the *Monell* claim against the City of Adrian, as there is a question of fact concerning its ratification of a history of issues with Defendant Powers while employed with the City of Adrian, as well as with his previous employment.

II. <u>**Counter-Statement of Facts**</u>.

The entire incident is captured on video, which Plaintiff contends is sufficient in and of itself to create questions of fact for a jury.  A USB drive of this video will be filed under separate cover by traditional manner should the Court permit, and will be referred to herein as **Exhibit 1.**  The facts set forth below are depicted in the video, and further set forth within Defendant Powers' Case Report.  (**Exhibit 2).**

On September 27, 2019, at around 9:35 a.m., Defendant Powers pulled over Amy Shumate, Plaintiff's daughter, while driving along N. Main St. in Adrian. She pulled into the CVS parking lot. He pulled her over because after running a random check on the license plate, he saw that it did not match the vehicle. **(Exhibit 3 – Deposition of Defendant Powers, p. 36)**. Amy, pregnant at the time, called her father to pick her up, and waited outside while Defendant Powers performed an inventory of the vehicle contents.

Plaintiff, Robert Shumate arrived at the CVS at around 9:57 a.m., and recognized Defendant Powers from a previous encounter, when Plaintiff had an issue with his neighbor concerning a tree encroaching his property. Defendant Powers had already displayed an attitude with Robert's pregnant daughter, when she simply wanted to take a few items related to her upcoming physician visits out of the vehicle. Indeed, Defendant Powers was reprimanded as a result of the way he treated and spoke to her. (Id. at p. 60). In any event, he was clearly aggressive on this morning and was immediately hostile with Mr. Shumate who was simply there to pick up his daughter.

Despite what his report indicates, Mr. Shumate, 61 years old, did not threaten Defendant Powers and state "now you have a problem with me." It was clearly a question by Mr. Shumate to Defendant Powers. The video/audio speaks for itself. Mr. Shumate exited his vehicle and **Defendant Powers told him to get back in the**

**vehicle and "leave**." (Exhibit 1 at 22:17). Mr. Shumate replied that he had done nothing wrong, and had the right to be there while Defendant Powers finished the vehicle inventory. Defendant Powers agreed that Plaintiff did indeed have the right to be there and did not have to leave. (Exhibit 3, p. 42).

At this point, and frankly, <u>at any point</u>, Defendant Powers could have simply returned to Amy's vehicle and this incident would never have occurred. However, Powers was clearly looking to let off some steam, and continued to focus his attention on Mr. Shumate. While Mr. Shumate was standing with his daughter waiting from a distance of both his vehicle and his daughter's vehicle, Plaintiff told Powers to finish up with the vehicle so that they could leave. Powers said, "Don't tell me what to do." (Exhibit 1 at 22:48).

Mr. Shumate then walked over to **his** vehicle, which was precisely consistent with the previous order/direction from Powers, that Mr. Shumate leave. (Id). He testified:

49

```
22  Q.   And despite that -- and so he's investigating a crime
23       and you decide that you're going to walk back to that
24       vehicle, your vehicle, correct?
25  A.   Yeah, because he told me to leave.
```

50

```
 1  Q.   You were going to go get into your vehicle and leave;
 2       that was your purpose?
 3  A.   Yes, I was.  I was going to leave.
 4  Q.   While your daughter was there?
 5  A.   Yes, because I wasn't going to get in it with him.  I
```

6        wanted to leave to avoid the confrontation with that
7        officer.  He stood over there glaring at me like --
8        after I got there like I was a victim or something.

(**Exhibit 4 – Deposition of Plaintiff, pp. 49-50**).

Powers now told him **not** to get in the vehicle, and Mr. Shumate complied. Defendant Powers started approaching Plaintiff, who was now clearly afraid of Powers and put both of his hands up in the air and started slowly walking backwards. (Exhibit 1 at 22:53).  Powers started screaming at Mr. Shumate, and while Plaintiff continued to slowly back away from Powers, with both hands up in the air and visible, Powers pulled out his Taser and, **with no warning**, fired it at Plaintiff's chest area.  (Id. at 23:05).  Plaintiff fell backwards to the ground, and landed on the back of his head and his back.  Fortunately, he just missed striking the edge of the curb at the CVS entrance.  Not only was there no warning from Defendant Powers that he was going to deploy the taser, but he never told Plaintiff that he was arresting him, apparently for obstructing with his inventory of Amy Shumate's vehicle.

Powers jumped onto Plaintiff, who was truly in fear for his life, as his daughter kept screaming that Plaintiff had health issues and to leave him alone.  (Id).  To be clear, Defendant Powers is 5'8 and 225 pounds.  (Exhibit 3, p. 10).  Robert Shumate is 5'10 and 145 pounds, and was on disability at the time of the incident.  (Exhibit 4, p. 6-7).  Nevertheless, Defendant Powers, while admittedly pressing his weight down onto Plaintiff, fired the Taser two more times, punched Plaintiff in the

neck/side of the head multiple times, and kneed Plaintiff in the abdomen multiple times. Notably, though, Powers was able to set down his Taser and call for backup while on top of Plaintiff and pressing his weight down on his back. (Exhibit 1 at 23:31).

Powers' credibility is entirely at issue, as his report indicates he applied back hand and palm heel strikes. Amy Shumate's testimony sets forth otherwise:

> 22
> 21 Q. Thank you. I'm going to read the last sentence that we
> 22    just went over. "I screamed to the officer that my dad
> 23    has medical problems, not to tase him. Then he dropped
> 24    my dad to the ground and started using more force on
> 25    him punching him in the face." Did you physically
>
> 23
> 1    observe the officer punch your dad in the face?
> 2 A. Yes, I did.
> 3 Q. Did you observe the officer punch your father in the
> 4    ribs?
> 5 A. Yes, I did.
> 6 Q. Did you observe the officer slam his head down?
> 7 A. Yes, I did.
> 8 Q. Was your dad at that point still refusing the commands
> 9    of the officer to get his hands up?
> **10 A. He couldn't do nothing. The officer was sitting on him**
> **11    and he had his hands across his chest like this and**
> **12    blocking his face.**

**(Exhibit 5 – Deposition of Amy Shumate, pp. 22-23).**

The following photograph, taken by Amy Shumate at the scene, further places Defendant Powers' credibility at issue, as it clearly depicts him about to deliver a closed-fisted punch to Mr. Shumate as he lay helplessly on his back.



The report confirms that the back-up officer had no issues applying the handcuffs to Plaintiff. (Exhibit 2 – Case Report). Plaintiff was taken to Promedica Bixby emergency by Adrian Fire/EMS. (Exhibit 2).

The Mission Statement of the Adrian Police Department states that it "will work in partnership with the Community by responding to its needs in a professional manner. Our commitment is that every citizen we work with will be treated with the dignity and respect they deserve." (**Exhibit 6 – Adrian Police Policies and Procedure**). "Officers shall use force in accordance with law and established Departmental Policy." (Id., Rule 1.54). Unnecessary force is prohibited; only such force that is necessary to secure a prisoner is authorized. (Id., Rule 3.9).

The Taser policy states that "**Officers shall not activate their Taser unless it is necessary to do so** . . . It is strictly forbidden to use the Taser in a manner in which is punitive . . ." (Id., PP 1.3.4, III.7 and 9).  Chief Vincent Emrick agreed that Defendant Powers had other options than the use of the Taser to initially subdue Mr. Shumate:

> 6   Q.   And then separately there is a taser policy.  Would
> 7        you agree with me that City of Adrian policy expressly
> 8        states that, "Officers should not activate their taser
> 9        unless it is necessary to do so"?
> 10  A.   Your question was should not activate the taser unless
> 11       it is necessary to do so?
> 12  Q.   Yes.
> 13  A.   Yes, I agree with that.
> 14  Q.   And we have already covered that Officer Powers had
> 15       other options other than use of the taser in order
> 16       subdue Mr. Shumate, correct?
> 17  A.   Yes.

(**Exhibit 7 – Deposition of Chief Emrick, p. 46**).

The Taser policy states that it should not generally be used against elderly persons, and that the circumstances and seriousness of the offense should be considered before deployment.  Its use should also be avoided if a subject is likely to receive a secondary injury resulting from a fall.  (Exhibit 6, PP 1.3.9, IX.K,L and M).

Powers claims that he was somehow fearful of this 61-year-old, disabled, 145-pound man, but it is undisputed by both Defendant Powers and Chief Emrick that

Plaintiff was backing away from his vehicle, and slowly backing away from Defendant Powers, at the moment he was tased.  (Id. at 44; and Exhibit 3, p. 50).

Adrian policies further set forth that Tasers should be used after soft empty hand control has been unsuccessfully attempted.  Circumstances indicating a higher level of control is required must be articulated.  (Exhibit 6, PP 1.3.9, IX.B).  Officers are required to consider the seriousness of the crime, size, age and weight of the subject, the size, physical ability of the officer, weapons possessed by the subject, and whether the subject can later be recaptured.  (Id., PP 1.3.1 B.1 and 2).

Again, the video itself presents questions of fact as to Plaintiff's excessive force claims.  The initial tasing of Plaintiff, and the subsequent two tasings, and multiple punches and knee strikes by Defendant Powers are independent actions that each, when considered on their own, constitute cognizable claims of excessive force. A jury could certainly conclude from the video that Powers was "on edge" for the entire traffic stop, including in his interactions with Amy Shumate.  A jury could certainly conclude that it was Defendant Powers used excessive force when he unnecessarily escalated this situation, and that Plaintiff first tried to leave the scene as initially instructed, and then was tased when he was trying to deescalate the situation himself by backing slowly away from Defendant Powers with his hands up.

III. **Argument.**

A. **Standard of Review.**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In *Copeland v Machulis*, 57 F3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Therefore, "Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." *Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C,* 532 F.3d 405, 410 (6th Cir. 2008). However, "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial." *Id.* at 411.

### B. <u>Genuine Issues of Material Fact Clearly Exist as to Whether Defendant Powers Used Excessive Force</u>.

Plaintiff has properly pleaded, and has presented sufficient evidence from which a reasonable juror could conclude in Plaintiff's favor as to his excessive force claims. 42 U.S.C. § 1983 provides a cause of action for the deprivation of any rights,

privileges, or immunities secured by the United States Constitution and laws of the United States. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990)(quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but instead provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (U.S. 1989). When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

To state a claim under 1983, a plaintiff must allege two essential elements: 1) that a right secured by the Constitution or laws of the United States has been violated, and, 2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (U.S. 1988). The Fourth Amendment provides, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated."

To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. *Brower v. Cty. of Inyo*, 489 U.S. 593, 599, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). "A seizure occurs where, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not

free to leave." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006), citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

A proper analysis of Fourth Amendment reasonableness focuses on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The central legal question is whether a reasonably well-trained officer in defendant's position would have known that the force used was unreasonable in the circumstances. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998). **Whether the force used in a particular case was excessive is an issue for the jury when reasonable minds can differ.  *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000).**

And when, as here, a plaintiff claims that excessive force was used multiple times, "the court must segment the incident into its constituent parts and consider the officer's entitlement to qualified immunity at each step along the way." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 865 (6th Cir. 2020)

While it is true that police have "the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), in determining whether the use of force in

effecting an arrest is excessive in violation of the Fourth Amendment, we must determine "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. This inquiry assesses "reasonableness at the moment" of the use of force, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

The bottom-line inquiry is "whether the totality of the circumstances justifies a particular level of force." *Coffey v. Carroll*, 933 F.3d 577, 588 (6th Cir. 2019) (citing *Mitchell v. Schlabach*, 864 F.3d 416, 421 (6th Cir. 2017)). The three factors from *Graham* guide this analysis.  Balancing these factors, and viewing the record in the light most favorable to Plaintiff, a reasonable juror could conclude that Powers used excessive force both when he initially tased Plaintiff, and subsequently when he deployed his taser two more times and punched and kneed him repeatedly while holding him down on the ground with great force with his weight.

Defendants' contention that Plaintiff's active resistance constituted a justifiable basis for the force used by Powers is simply incorrect.  Plaintiff disputes that he was actively resisting arrest, as that term is defined under law.  Nevertheless, even if his behavior constituted active resistance, Defendant Powers' use of the taser

initially upon Plaintiff was contrary to Adrian policy.  Tasers are not to be used unless "necessary," and a reasonable juror could decide that it was not necessary to use it in this case.  Plaintiff could have been subdued by other means, as conceded by Chief Emrick, if Powers insisted upon doing so.  Plaintiff maintains he could have simply gone back to Ms. Shumate's vehicle and finished his task at hand.

Tasers are not to be used on the elderly.  Age and health, as well as the physical ability of the officer are factors that need to be considered by the officer, per Adrian policy.  Plaintiff was slowly walking backwards away from Defendant Powers and away from his vehicle (the apparent source of "fear") at the time of the initial deployment of the taser.  Plaintiff had his hands open and arms in the air.  Plaintiff was headed backwards toward a curb, a factor that must be considered per Adrian policy.

Dr. Aaron Westrick is an expert witness concerning police policy and procedure issues, and will opine at trial that Defendant Powers' use of force was excessive.  (**Exhibit 8 – Declaration and Report of Dr. Westrick**).  He will opine that Powers forcefully escalated the situation by his use of paraverbal communication, competing orders/demands, use of weaponry (TASER) and not utilizing other common de-escalation techniques.

He opines that Officer Powers gave conflicting orders/direction to Mr. Shumate, that Mr. Shumate was retreating (walking backwards) away from Officer

Powers (and his truck) as ordered by the Officer, and that Officer Powers then escalated his use-of-force by using his taser and shocking him to the pavement on his back.  Officer Powers then delivered what he described as open-handed blows to Mr. Shumate while Plaintiff was on the ground/pavement on his right side with the TASER barbs lodged in the front of his body crying in pain.  Therefore, he concludes that "Officers Powers' use-of-force was outside of Adrian Police Policies (Use-of-Force, Authorized Weapons, TASER), and his delivery of blows to Mr. Shumate was excessive contrary to accepted police practice given that Mr. Shumate was on the ground TASED and incapacitated with a much heavier Officer Powers on top of him."  (Id).

However, whether Plaintiff was "actively resistant" is in dispute and for a jury to decide.  As Dr. Westrick describes the facts according to Defendant, "While on the ground, Officer Powers interpreted Mr. Shumate's action of putting 'his legs underneath him' as active resistance, Powers continued to use his ~230 body to press down ~140 lb. Shumate believing he was trying to get-up. Officer Powers then re-energized his TASER to deliver a (drive) stun, delivering the stun to a prone Mr. Shumate. When Mr. Shumate was on his back and on the pavement/ground, Officer Shumate struck him with a series of knee strikes to the abdomen and then hand strikes to Shumate's right brachial plexus nerve, then more knee strikes to Shumate's left leg. Mr. Shumate who was incapacitated and on the ground was battered by

Officer Powers' series of strikes and drive stuns (2x's)."

He concludes that "the actions of Officer Powers clearly violate department policies, legal standards, best practices, and the Michigan Commission on Law Enforcement Standards Subject Control Continuum. (Please note the Adrian Police Department Use-of-Force policy and the MCOLES Subject Control Continuum are similar.)"  (Id).

He will testify at trial that:

> Use of weaponry (TASER) to control a retreating citizen (Passive Resistant and/or Active Resistant) is (generally) prohibited and is restricted by Adrian Police Department Policies, Use-of-Force, Authorized Weapons, and TASER. The escalation of force used on Mr. Shumate was not reasonable given the severity of the suspected (peace violation) crime, and the actual (very minimal if any) threat to the public and officer. Disturbing the peace through profane speech is not a violent personal crime even when called "active resistance." (Any action by a subject that attempts to prevent an officer from gaining control of the subject, (e.g., pulling/pushing away, blocking, etc.)). Appropriate law enforcement control measures in this incident did not include the use of weaponry TASER that was deployed/stunned three times. The use-of-force was not reasonable (Use-of-Force Policy), not necessary (TASER Policy) and was indiscriminate- without careful judgement- (Authorized Weapon Policy).

Plaintiff was apparently being arrested, <u>although never told that he was being placed under arrest</u>, for obstructing with the inventory of Amy Shumate's vehicle. A jury could easily conclude that this is not as serious crime, especially as Powers concedes that he knew where Amy Shumate lived, had no intention of taking her to jail, and could have processed this inventory at any time.  (*See e.g., Goodwin v. City*

*of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015) ("A jury could conclude that disorderly conduct is not a 'serious' crime when determining whether an officer used excessive force in effecting the arrest for that crime.").

As to the second factor, Plaintiff presented no threat to Defendant Powers, or anyone, at the time he initially deployed the taser, and certainly at the time he had already been tased to the ground and Defendant Powers was on top of him greatly exceeding the weight of Plaintiff.  The video certainly sets forth a question of fact for a jury to decide what, if any, threat Plaintiff posed to Defendant Powers or others. Again, he was slowly walking away backwards from Defendant Powers, with his hands open and arms up in the air, and away from his vehicle.

As to the third factor, there is a question of fact for the jury to decide as to whether Plaintiff was actively resisting.  Prior to the initial tasing, Plaintiff was merely backing away slowly from Defendant Powers.  "If there is a common thread to be found in our caselaw on this issue, it is that **noncompliance alone does not indicate active resistance**; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013) (emphasis added).  As in *Eldridge,* Plaintiff maintains that he was the one trying to de-escalate the situation by first, trying to leave, and second, walking slowly away from Defendant Powers.  Defendant Powers is the one who escalated the situation.

Dr. Westrick will testify that Officer Powers used excessive force during this

incident, including his failure to communicate and de-escalate a peace disturbance. His use of force was excessive in applying a TASER 3x's to control Plaintiff, whether confronted with Inactive Resistance, Passive Resistance or Active Resistance. (Exhibit 8). "The use of a TASER 3x's during this incident was outside of legal bounds, department polices (TASER and Use-of-Force), and overall subject control. Officer Powers also struck Mr. Shumate excessively while he was on the ground. Officer Powers' actions in this incident and history exhibit his disregard for his peace officer status. Police officers (in uniform) utilize force/authority by their very presence and verbal communication." (Id).

Therefore, the three *Graham* factors, when viewed favorably to Plaintiff, require that the Court deny Defendants' motion as to Plaintiff's excessive force claims. An excessive-force claim will not fail simply because the plaintiff did not suffer serious injury, but may succeed "even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage." *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999). "In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Miller v. Sanilac Cty.*, 606 F.3d 240, 252 (6th Cir. 2010).

Defendant Powers is not entitled to qualified immunity. The question of whether qualified immunity is warranted involves a two-step inquiry: (1) Whether

the facts, *considered in the light most favorable to the plaintiff*, demonstrate a constitutional violation; and (2) Whether the constitutional right is clearly established. *Saucier v. Katz*, 533 U.S. 194, 200-201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

Although the "right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, we have held that "[c]ases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Ruemenapp, supra,* at 813, citing *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).

**For these reasons, summary judgment is also not warranted as to his state-law claims**. Plaintiff, again, contends that the video evidence alone creates a question of fact as to his state law claims. Nevertheless, because summary judgment is improper as to his excessive force claims, likewise, summary judgment is improper as to his state-law claims. *See e.g., Wright,* at 878.

### C. <u>Genuine Issues of Material Fact Clearly Exist as to Plaintiff's <em>Monell</em> Claim.</u>

Defendant Powers and Chief Emrick concede that Defendant Powers has had a history/pattern of behavioral issues, both with the City of Adrian and with his previous employment at Ingham County. (See e.g. Exhibit 3, pp. 12-15; Exhibit 7, p. 18). Chief Emrick stated in his report that Officer Powers has a lengthy of

history with dispatch and radio traffic, 15 citizen complaints over three years, **seven incidents that actually resulted in some form of discipline,** requiring counseling and suspensions. Emrick concedes that seven incidents requiring discipline is "high." (Exhibit 7, p. 28). He goes on to testify that Powers demonstrated a pattern of behavior where he aggravated situations. (Id. at p. 29).

Dr. Westrick will testify at trial that the Adrian Police Department failed to address Officer Powers' aggression and use-of-force violations by failure to train, supervise and progressively discipline, exhibiting an indifference to citizens. (Exhibit 8). "The Adrian Police Department's failure to recognize the pattern of behavior where Officer Powers aggravates situations, and uses excessive force, accumulated with the excessive use-of-force and battery and subsequent injuries of Robert Shumate, a 140 lb. 61 year old." (Id)

> The Internal Investigation concluded in the Outcome section: "In reviewing Ofc. Powers incidents a pattern of behavior emerges where he aggravates situations by the way he treats those involved. His behavior is similar for both internal (coworkers, prosecutors, dispatchers) and external (citizens, arrested parties) customers. It was communicated to Ofc. Powers that of the obstruction cases reviewed it may not have been necessary to use force on the person if he exhibited patience or otherwise treated them with respect." Further stating, "5 day suspension without pay, loss of FTO designation, and training in de-escalation." The report also cited past "minor discipline" along with three examples failure to "get along" with others, an excessive use-of-force incident, and indicates 15 prior citizen complaints over a three year span with 7 of them resulting in minor discipline. Through the review of this case, I noted there was no separate Use-of- Force Report submitted. Use-of-Force reporting forms are utilized to track force incidents and identify problematic officers who use force to excess or

too often. Utilizing this reporting system (as indicated in Adrian Police Force Reporting Policy) would assist the department in identifying Officers like Powers and would assist in department intervention before aggravating and excessive force incidents take place. **The totality of this circumstance exhibits excessive force and policy/practice issues with both Officer Powers and the Adrian Police Department**

(Id).

He therefore concludes that Adrian just did not enforce and practice its own rules over a prolonged time. (Id).

"A plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright, supra,* at 882, citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir. 1990).

That is precisely what happened here. Defendant Powers' history is conceded. *Wright* is precisely on point. In that case, the Plaintiff argued that the Chief's failure to investigate numerous claims of excessive force amounted to ratification of unconstitutional acts by a final decision-maker. The Court determined that was a question for the jury. Similarly, here, a jury should decide Plaintiff Shumate's *Monell* claim against the City of Adrian.

## IV. <u>Conclusion.</u>

This Court should deny Defendants' motion for summary judgment, and let a trier of fact weigh credibility and make the appropriate findings of fact.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion for Summary Judgment, and award Plaintiff any and all costs it deems justified.

Respectfully submitted,

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

By: /S/ David A. Dworetsky
GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
Dated: February 26, 2021          (248) 355-5555